UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NALINI KUMAR, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>NATIONWIDE MUTUAL INSURANCE COMPANY,<br><br>    Defendant. | Case No.  22-cv-03852-TLT   (LJC)<br><br>**ORDER REGARDING JOINT DISCOVERY LETTER**<br><br>Re: ECF No. 28 |

Before the Court is the parties' Joint Discovery Letter. ECF No. 28. The parties dispute the sufficiency of Defendant Nationwide Mutual Insurance Company's (Nationwide) privilege logs and the discoverability of several types of documents Nationwide is withholding based on, *inter alia*, attorney-client privilege and attorney work product protection. Id. On March 28, 2023, the Court ordered the parties to submit additional briefing and ordered Nationwide to file its most recent privilege logs for the Court's review. ECF No. 33. Nationwide filed its letter brief and its amended and supplemental privilege logs on March 31, 2023 (ECF No. 36) and Plaintiffs Nalini Kumar and Allen Singh (Kumars) filed their letter brief on April 5, 2023. ECF No. 37. The Court held a hearing on April 6, 2023. ECF No. 38. Having read the parties' submissions and carefully considered their arguments and the relevant legal authority, and for the reasons explained below, the Court orders Nationwide to revise its privilege logs as to some categories of documents, but otherwise rejects Plaintiffs' main challenge to Nationwide's claim of attorney-client privilege over communications with its outside counsel, Julian Pardini.

I.  **BACKGROUND**

The Kumars had a house fire on July 4, 2020, and promptly submitted a claim to their insurer, Nationwide. Complaint (Compl.) ¶ 14, ECF No. 1. Nationwide assigned employee

1  Shawn Dalton to investigate Plaintiffs' claim.  Id. ¶ 20.  On July 24, 2020, Nationwide referred the
2  claim to its Special Investigations Unit (SIU) for an investigation into potential insurance fraud.
3  Declaration of Lindsay Lathrum in Support of Defendant's Motion for Summary Judgment
4  (Lathrum Decl., Mot. for Summ. J.), Ex. C, ECF No. 32-1.  On October 28, 2020, Nationwide
5  contacted Julian Pardini from Lewis, Brosbois, Bisgaard & Smith, LLP (LBSS) to retain him as
6  outside counsel as to Plaintiffs' insurance claim.  Declaration of Lindsay Lathrum in Support of
7  Defendant's Letter Brief (Lathrum Decl., Letter Brief), ECF No. 36-1.

8  On December 31, 2020, Mr. Pardini sent a letter to the Kumars indicating that he had been
9  retained by Nationwide to "assist it with its investigation and evaluation" of their claim and to
10 "render legal advice."  Declaration of Dylan Schaffer in Support of Plaintiffs' Letter Brief
11 (Schaffer Decl.), Ex. B at 1, ECF No. 37-1.  Mr. Pardini informed the Kumars that he would be
12 conducting Examinations Under Oath (EUO) and instructed them to "direct all further
13 communications concerning this matter" to him and his law firm.  Id.

14 The Kumars retained counsel to assist them at the EUOs.  Compl. ¶ 42.  Allen Singh's
15 EUO began on February 25, 2021, via Zoom.  Id. ¶ 46.  It was terminated early, after Mr. Pardini
16 and Mr. Dalton refused to appear on camera and Mr. Singh asked to record the EUO in its entirety.
17 Id. ¶¶ 51-52.  Nalini Kumar's EUO was scheduled for that afternoon, but it did not occur.  Id. ¶ 53.

18 On March 24, 2021, the Kumars filed a lawsuit against Nationwide in Marin County
19 Superior Court.  Declaration of Samuel D. Jubelier in Support of Defendant's Motion for
20 Summary Judgment (Jubelier Decl.), Ex. A, ECF No. 32-2.  In their lawsuit, the Kumars alleged,
21 *inter alia*, that Nationwide unlawfully refused to permit a recording of their EUOs.  Id.
22 Nationwide retained Dentons US LLP (Dentons) to represent it in the litigation.  Id.  Shortly after
23 the Kumars filed their Marin County lawsuit, on April 14, 2021, Mr. Pardini wrote to them to deny
24 their claim in its entirety, for noncooperation based on their failure to proceed with the EUOs or
25 deliver documents requested by Nationwide.  Schaffer Decl., Ex. H.

26 On June 10, 2021, the Kumars' Marin County case was removed by Nationwide to this
27 Court, and it was assigned to the Honorable Judge Thomas S. Hixon.  Jubelier Decl., Ex. A.  At a
28 hearing on Nationwide's motion to dismiss on December 16, 2021, Judge Hixon agreed with

1 Nationwide that Plaintiffs did not have the right to insist on video recording its representatives at

2 the EUO. Id., Ex. B at 22. Plaintiffs dismissed their case without prejudice that same day. Id. ¶ 4.

3 On December 28, 2021, Nationwide agreed to reinstate Plaintiffs' claim. Compl. ¶ 70.

4 However, on May 11, 2022, Plaintiff Nalini Kumar filed an entirely separate case against

5 Nationwide in Alameda County Superior Court, seeking declaratory relief in state court as to

6 whether she had a right to videorecord Nationwide's representatives and counsel during her EUO.

7 Lathrum Decl., Mot. for Summ. J., Ex. H at 15. Kumar ultimately obtained a ruling holding that

8 she was entitled to record the EUO, and Nationwide has appealed the ruling. Def. Mot. for Summ.

9 J. 4, n.13, ECF No. 32.

10 Mr. Singh's EUO proceeded on June 21, 2022. Compl. ¶ 77. Nationwide alleges that

11 during the EUO, Mr. Singh and his counsel were uncooperative and refused to provide

12 Nationwide with any information. Def. Mot. for Summ. J. 5-8. Mr. Singh appeared the next

13 morning (June 22, 2022) for his continued EUO, but Nationwide cancelled the EUO after a period

14 of examination. Compl. ¶ 80. That same day, Nationwide also cancelled Ms. Kumar's EUO,

15 which was set to begin after Mr. Singh's EUO was completed. Id. ¶ 81.

16 The Kumars filed this pending lawsuit against Nationwide on June 29, 2022. ECF No. 1.

17 They brought causes of action for insurance bad faith, breach of contractual duty to pay a covered

18 claim, negligent failure to obtain insurance coverage, and negligent misrepresentation. Id.

19 Nationwide is once again being represented by Dentons. ECF No. 16. On September 1, 2022, Mr.

20 Pardini sent Nationwide's final denial letter to Plaintiffs. Schaffer Decl., Ex. K. On November

21 21, 2022, the Court granted the parties' stipulated protective order to address the production of

22 confidential, proprietary, or private information. ECF No. 26.

23 **II.     LEGAL STANDARD**

24 Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding

25 any *nonprivileged* matter that is relevant to any party's claim or defense and proportional to the

26 needs of the case…" (emphasis added). A party that withholds otherwise discoverable material

27 based on a privilege or the work product doctrine must "expressly make the claim…[and] describe

28 the nature of the documents, communications, or tangible things not produced or disclosed—and

do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(i)-(ii).

In diversity cases, a federal court must determine "the existence or extent" of a privilege under the state law that otherwise governs decision of the case. See Star Ed., Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal., 7 F.3d 856, 859 (9th Cir. 1993) (citing Federal Rule of Evidence 501). Under California law, the attorney-client privilege is governed by statute and applies to confidential communications between client and lawyer during the course of the attorney-client relationship. See Cal. Evid. Code §§ 911, 954, 952. The attorney-client privilege "does not apply to every single communication transmitted confidentially between lawyer and client. Rather the heartland of the privilege protects those communications that bear some relationship to the attorney's provision of legal consultation." Los Angeles Cnty Bd. of Supervisors v. Super. Ct., 2 Cal. 5th 282, 294 (2016).

"The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise." Costco Wholesale Corp. v. Super. Ct., 47 Cal. 4th 725, 733 (2009). "Once that party establishes facts necessary to support a prima facie claim of privilege," then the privilege is presumed to apply, and "the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." Id.

The Ninth Circuit has previously described characteristics of a valid privilege log, which includes identification of "(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated." In re Grand Jury Investigation, 974 F.2d 1068, 1071 (9th Cir. 1992).

However, there is no "*per se* waiver rule that deems a privilege waived," and the Court must "make a case-by-case determination" based on "the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged…the timeliness of the objection and accompanying

information about the withheld documents…the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy…or unusually hard." Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont., 408 F.3d 1142, 1149 (9th Cir. 2005).  These factors are applied as part of a "holistic reasonableness analysis," not as a "mechanistic determination of whether the information is provided in a particular format." Id.

### III.  DISCUSSION

In the Joint Discovery Letter and their supplemental briefing, the parties have made various assertions and arguments regarding the discoverability of records that Nationwide has redacted or withheld on its privilege logs based on, *inter alia*, attorney-client privilege and attorney work product protection.  ECF Nos. 28, 36, 37.  The disputes that the parties most clearly articulate for the Court's intervention fall into these general categories: whether the records involving Nationwide's communications with Mr. Pardini, following his retention, are privileged; and the sufficiency of Nationwide's privilege logs, including a single entry through which Nationwide justifies its withholding of all records created after the filing of this Complaint.  The Court will evaluate each category in turn.

#### A.   Records of Nationwide's Communications with Mr. Pardini

The parties' key dispute is whether Nationwide's communications with Mr. Pardini as to Plaintiffs' claim are protected by the attorney-client privilege and attorney work product doctrine.  Nationwide vigorously argues that its communications with Mr. Pardini are in fact privileged.  Therefore, the Court will address this category of records first.

##### 1.   Attorney-Client Privilege

Plaintiffs claim that the attorney-client privilege does not apply to Nationwide's communications with Mr. Pardini because the "dominant purpose" of his retention was to lead the claim investigation and act as a claims adjuster.  ECF No. 37 at 2.  That is, he was not acting as a lawyer when he was communicating with Plaintiffs.  Id.  They also go a step further and allege that Nationwide only retained Mr. Pardini to "hide" its claim process in bad faith and avoid discovery of its claims handling process.  Id.  In support of their claims, Plaintiffs submitted a

declaration from their attorney, Dylan Schaffer, detailing Plaintiffs' and their counsel's interactions with Mr. Pardini. ECF No. 37-1. Nationwide argues that the "dominant purpose" of its relationship with Mr. Pardini was that of attorney-client, not claims adjuster-insurer. ECF No. 36 at 1-2. Nationwide submitted two declarations, one from Mr. Pardini, and another from Lindsay Lathrum, Claim Manager for Nationwide, who indicates that she "oversaw the activity of the assigned adjusters on the claim file" for Plaintiffs. Lathrum Decl., Letter Brief ¶ 3.

California law "confers a privilege on the client 'to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer....'" Costco Wholesale Corp., 47 Cal. 4th at 732 (quoting Cal. Evid. Code § 954). The party asserting the privilege must prove that the attorney and client established a relationship, and that the "*dominant purpose* of the relationship" was that of attorney-client. Id. at 739-40 (emphasis added). "When an insurer hires an attorney both to provide a legal opinion and to serve as a claims adjuster, the court must make a determination of which purpose was primary." McAdam v. State Nat. Ins. Co., 15 F. Supp. 3d 1009, 1015 (S.D. Cal. 2014) (internal quotation marks and citation omitted). "The court takes the consideration of that question very seriously, particularly in light of the critical importance of claims files to the litigation of an insurance bad faith claim…" Umpqua Bank v. First Am. Title Ins. Co., No. CIV S-09-3208 WBS EF, 2011 WL 997212, at *3 (E.D. Cal. Mar. 17, 2011). If the dominant or primary purpose of the relationship was not that of attorney-client, then the communications are "generally discoverable..." McAdam, 15 F. Supp. 3d at 1015.

It is not necessary for the Court to review each communication to determine its dominant purpose. See Costco Wholesale Corp., 47 Cal. 4th at 739.[1] If "the communications were made

---

[1] In their Letter Brief, Plaintiffs claim that "[t]o justify its withholding, Nationwide must show each withheld or redacted document or diary entry involved a 'confidential communication[s] between client and lawyer.'" ECF No. 37 (quoting Samantha B. v. Lexington Ins. Co., No. CV208895MWFJPRX, 2021 WL 8531694, at *1 (C.D. Cal. Aug. 17, 2021)). This is not an accurate characterization of the law. Samantha B. cited 2,022 Ranch v. Super. Ct., 113 Cal. App. 4th 1377, 1399 (2003), which was disapproved of by Costco Wholesale Corp., 47 Cal. 4th at 739-40. In Cotsco Wholesale Corp., the California Supreme Court held that the court in 2,022 Ranch erred in ordering the trial court to review each communication to determine its dominant purpose. 47 Cal. 4th at 739. Instead, the "proper procedure" was for the "trial court first to determine the dominant purpose *of the relationship* between the insurance company and its in-house attorneys." Id. at 739-40.

1  during the course of an attorney-client relationship, the communications, including any reports of
2  factual material, would be privileged, even though the factual material might be discoverable by
3  some other means. If the [Court] instead conclude[s] that the dominant purpose of the relationship
4  was not that of attorney and client, the communications would not be subject to the attorney-client
5  privilege and therefore would be generally discoverable." Id. at 740.

6  Umpqua Bank, a bad faith insurance action similar to the instant matter, is instructive here.
7  There, the court applied California law and held that the dominant purpose of the relationship
8  between First American Title Insurance Company (First American) and its coverage counsel was
9  that of attorney-client, not claims adjuster-insurance corporation. 2011 WL 997212, at *3. In
10 doing so, the court relied on a declaration from First American's in-house claims counsel, where
11 she indicated that she was the claims adjuster assigned to the case; that she hired coverage counsel
12 to provide a legal coverage opinion concerning the claims made by Umpqua Bank; that she
13 authorized him to conduct any necessary factual investigation and to directly contact Umpqua
14 Bank; that all their communications remained confidential; that coverage counsel was never an
15 employee of First American; and finally, that she authorized him to issue a coverage letter to
16 Umpqua Bank's attorney only *after* he provided his legal opinions to First American. Id.

17 The facts here track very closely to the facts in Umpqua Bank. That is, Ms. Lathrum—
18 who oversaw Nationwide's processing of Plaintiffs' claim as Claim Manager—contacted Mr.
19 Pardini to retain him as outside counsel so he could provide legal advice as to Nationwide's
20 coverage obligations. Lathrum Decl., Letter Brief ¶¶ 1, 4. This included undertaking a factual
21 investigation and taking the Kumars' EUOs. Id. ¶ 4. Nationwide kept communications with Mr.
22 Pardini confidential and at no point was Mr. Pardini a Nationwide employee. Declaration of
23 Julian Pardini in Support of Defendant's Letter Brief (Pardini Decl.) ¶ 6, ECF No. 36-2. In
24 addition, Nationwide made the decision to deny Plaintiffs' claim in 2021 and 2022 after Mr.
25 Pardini provided his legal advice, and Mr. Pardini sent the denial letters to Plaintiffs' counsel only
26 after this legal advice was provided to Nationwide. Lathrum Decl., Letter Brief ¶ 9; Pardini Decl.
27 ¶ 7. Finally, Nationwide continued to adjust and process Plaintiffs' claim after Mr. Pardini was
28 retained in October 2020, through normal claims handling employees who communicated directly

1    with the Kumars.  Lathrum Decl., Letter Brief ¶¶ 11, 13 and Ex. A.

2           Given all the above, Nationwide has quite clearly met its "burden of establishing the
3    preliminary facts necessary to support a prima facie claim of attorney-client privilege" over its
4    communications with Mr. Pardini.  Umpqua Bank, 2011 WL 997212, at *4.

5           In response, Plaintiffs contend that Mr. Pardini repeatedly emphasized he was to be their
6    primary point of contact.  Schaffer Decl. ¶¶ 21-23, 32.  But this was also the case in Umpqua
7    Bank, where First American's coverage counsel became the only point of contact for the insured,
8    Umpqua Bank.  2011 WL 997212, at *3.  The court there found this "suspicious," along with the
9    fact that First American's coverage counsel sent the denial letter directly to Umpqua Bank's
10   counsel.  Id.  Here, Mr. Pardini sent Plaintiffs' counsel both denial letters, provided Plaintiffs with
11   claim documents, and responded to their demand for appraisal after Plaintiffs made those requests
12   to their claims adjuster, Mr. Dalton, not to Mr. Pardini.  Schaffer Decl. ¶¶ 22-23, 27, 37.  Plaintiffs
13   claim that these are tasks typically associated with a claims adjuster.

14          This may be true.  However, "the intermingling of roles does not relieve the Court of the
15   requirement that it determine the dominant purpose of the relationship in order to decide whether
16   the attorney-client privilege applies."  Ivy Hotel San Diego, LLC v. Houston Cas. Co., No.
17   10CV2183-L BGS, 2011 WL 4914941, at *5 (S.D. Cal. Oct. 17, 2011) (citing Costco Wholesale
18   Corp., 47 Cal. 4th at 739-40).  In Cason v. Federated Life Ins. Co., No. C-10-0792 EMC, 2011
19   WL 1807427 (N.D. Cal. May 11, 2011), a disability insurance bad faith action, the Court
20   acknowledged that the attorney for the insurance company at times "performed what where
21   arguably nonlegal tasks," including serving as the point of contact and providing documents for
22   review to medical examiners.  Id. at *2.  But it nevertheless held that these "few instances in the
23   current record do not establish that the dominant purpose of the relationship" was that of claims
24   adjuster-insurance corporation, and not attorney-client.  Id.

25          The Court is particularly persuaded by Nationwide's evidence that its personnel were
26   continuing to adjust and process Plaintiffs' claim even after Nationwide retained Mr. Pardini and
27   at the same time Mr. Pardini was communicating with Plaintiffs' counsel to provide documents
28   and proceed with conducting the EUOs.  Lathrum Decl., Letter Brief ¶¶ 11, 13-14 and Ex. A.  For

example, Nationwide provides claim diary notations from February 24 and 25, 2021 by Nationwide adjuster Mr. Dalton, who stated that "he received additional [Additional Living Expense] receipts from Ms. Kumar, that he issued payments based on them, and that he advised Ms. Kumar of the payments by email and letter."  Lathrum Decl., Letter Brief ¶ 13 and Ex. A.

Ultimately, the record reflects that Mr. Pardini was primarily responsible for conducting a factual investigation into the Kumars' claim and conducting their EUOs, which Nationwide indicates was for the purpose of providing legal advice regarding its coverage obligations under their insurance policy, while Nationwide claims-handling employees continued to communicate with the Kumars about insurance payouts and the status of their claim.  Id. ¶¶ 4, 7, 13.

Renovate America, Inc. v. Lloyd's Syndicate 1458, No. 19-CV-1456-GPC(WVG), 2020 WL 5106657, at *3-4 (S.D. Cal. Aug. 31, 2020), upon which Plaintiffs rely, is easily distinguishable.  There, the court found that the attorney's dominant purpose was that of a claims adjuster because she issued coverage payments directly to the plaintiff, "no one was more involved with the claims than she was," and, importantly, the defendant insurance company made only "a scant and conclusory showing" in which it failed provide a declaration from the attorney whose communications were at issue.  Id.  Here, however, Nationwide has presented declarations from Mr. Pardini and Ms. Lathrum, a Nationwide Claim Manager, who oversaw activity of the adjusters assigned to the Kumars' claim and who contacted Mr. Pardini to retain him.

Plaintiffs also argue that Mr. Pardini's December 31, 2020 letter to the Kumars demanding documents "which included materials subject to privilege and privacy objections under the California constitution" demonstrate he was acting as a claims adjuster, because if Mr. Pardini was acting as a lawyer, "his conduct would run afoul of California Bar Rule of Professional Conduct 4.3(b)."[2]  ECF No. 37 at 3.  The letter Plaintiffs cite asks for records reflecting their right to the property, all investigative or police reports related to any property losses, names of insurance companies with whom they have made prior claims, all photographs of the subject property,

---

[2] "In communicating on behalf of a client with a person who is not represented by counsel, a lawyer shall not seek to obtain privileged or other confidential information the lawyer knows or reasonably should know the person may not reveal without violating a duty to another or which the lawyer is not otherwise entitled to receive."  Cal. Rule of Professional Conduct 4.3(b).

9

estimates, bids, or appraisals to replace their property, etc. Schaffer Decl. ¶ 3, Ex. B at 5. Plaintiffs do not explain in what ways these document requests sought privileged information and/or information that infringe on their privacy rights. Given Mr. Pardini's mandate from Nationwide to conduct a factual investigation with respect to their claim, it is not surprising that he was requesting such documents from the Kumars. And any leftover privacy concerns they may have over the information contained within these documents should be adequately addressed by the stipulated protective order already in place in this matter. See ECF No. 26.

Plaintiffs further argue that because Nationwide has never relied on any exclusion under the policy to disclaim coverage, then its contention that it hired Mr. Pardini to provide a coverage opinion is disingenuous. ECF No. 37 at 3; Schaffer Decl. ¶ 39. But Plaintiffs propose too narrow an interpretation for what constitutes legal advice under an attorney-client relationship. The absence of an asserted coverage exclusion in this litigation does not indicate that Nationwide was unjustified in retaining counsel to provide legal advice as to its coverage obligations pursuant to the Kumars' policy.

Finally, Plaintiffs make a similarly narrow, unpersuasive argument that Nationwide did not have an attorney-client relationship with Mr. Pardini because he has not served as its litigation counsel. ECF No. 37 at 3. Nationwide hired Dentons as litigation counsel for at least two of the three lawsuits related to this claim. Schaffer Decl. ¶¶ 26, 36. This does not foreclose Mr. Pardini acting as an attorney for Nationwide by gathering and analyzing claims-related facts and providing Nationwide with legal advice as to its coverage obligations.

In sum, Plaintiffs have not provided any evidence to "establish the communication[s] [between Nationwide and Mr. Pardini were] not confidential or that the privilege does not for other reasons apply." Umpqua Bank, 2011 WL 997212, at *2.

### 2. Attorney Work Product Protection

Nationwide has withheld and redacted a number of documents based on the attorney work product doctrine. Plaintiffs, however, claim that there is a "compelling need" under Rule 26(b)(3) for documents, such that an exception to the work product doctrine applies. ECF No. 37 at 3. Plaintiffs contend that there is a compelling need because "the strategy, mental impressions, and

10

1    opinions of [Nationwide] and its agents in the claim investigation are directly at issue" and those

2    documents are in the sole possession of Nationwide.  Id.

3            In response, Nationwide argues that "all of Mr. Pardini's strategy, mental impressions, or

4    opinions regarding the Claim were contained in confidential communications to Nationwide."

5    ECF No. 36 at 2-3.  Therefore, even "if work product protection does not apply, attorney-client

6    privilege still does."  Id.  Plaintiffs do not dispute this assertion by Nationwide, nor do they point

7    to any documents on Nationwide's privilege logs that are solely protected by the work product

8    doctrine and not the attorney-client privilege.

9            Because the Court has found that the attorney-client privilege applies to communications

10   between Nationwide and Mr. Pardini, and any finding by this Court regarding Nationwide's work

11   product claims will not result in Nationwide being required to produce additional documents, the

12   Court will not make a ruling on this issue at this time.  Plaintiffs are free to bring any future

13   disputes regarding this issue to the Court's attention, if they so choose.

14           **B.      Sufficiency of Nationwide's Privilege Logs**

15           Plaintiffs vigorously object to the sufficiency of Nationwide's privilege logs and urge that

16   Nationwide has partially forfeited attorney-client communications and work product privileges.

17   ECF Nos. 28 at 2; 37 at 1-2.  Plaintiffs object to entries on Nationwide's privilege logs that show

18   documents withheld and redacted before Mr. Pardini was retained in late October 2020.  ECF No.

19   37 at 2.  Some of these entries discuss "subrogation attorney" and "in-house counsel."  See, e.g.,

20   Schaffer Decl., Ex. N at 5 (NMIC-001147, Entry 26, dated August 5, 2020), 14 (NMIC-001402,

21   Entry 65, dated October 16, 2020).  Other entries indicate that the document is a communication

22   with counsel but there is no attorney involved in the communication or identified in the

23   description of the document.  See, e.g., id., Ex. N at 15 (NMIC-001412, Entry 68, dated August

24   11, 2020).

25           In response, Nationwide argues that its "claim diary," which is "an internal record of

26   Nationwide's claim handling activities," includes instances where "Nationwide claim handling

27   personnel documented the substance of their communications with outside counsel in the claim

28   diary, or summarized their understanding of outside counsel's strategy, impressions, and opinions

11

1  as communicated to Nationwide." ECF No. 36 at 3.  However, Nationwide does not otherwise
2  identify any attorneys (whether in-house or outside counsel) other than Mr. Pardini that were
3  involved in processing Plaintiffs' claim either before or after Mr. Pardini's retention.
4        Under California law, the lack of an attorney directly involved in the communication does
5  not mean the communication is not protected by the attorney-client privilege, because "in order to
6  implement the advice of lawyers, the advice must be communicated to others within the
7  corporation." Zurich Am. Ins. Co. v. Super. Ct., 155 Cal. App. 4th 1485, 1498 (2007).
8  Nevertheless, this does not relieve Nationwide of its obligation to provide enough information to
9  Plaintiffs so that they may "evaluate whether each of the withheld documents is privileged."
10  Burlington N. & Santa Fe Ry. Co., 408 F.3d at 1149.
11        Here, some of the documents withheld in full on Nationwide's privilege logs from before
12  Mr. Pardini was retained simply describe "communication with counsel" without identifying the
13  specific attorney involved in the communication. See, e.g., Schaffer Decl., Ex. N at 87-88.  This
14  is conclusory and not enough to establish the existence of the privilege.  See In re Telescopes
15  Antitrust Litig., No. 20CV03639EJDVKD, 2022 WL 17331257, at *4 (N.D. Cal. Nov. 29, 2022)
16  ("Suffice it to say that for each privilege claim, the privilege log should disclose the attorney and
17  client involved in the communication.") (citing In re Grand Jury Investigation, 974 F.2d at 1071).
18        Plaintiffs argue that Nationwide has forfeited privilege and work product protection
19  because it was alerted to these deficiencies.  ECF No. 37 at 1-2.  The record, however, does not set
20  forth clear evidence of a refusal to correct the deficiencies.  Plaintiff's briefing and the record do
21  not establish a timeline that makes it evident that Nationwide unreasonably refused to correct the
22  deficiencies.  Plaintiffs have submitted email correspondence as evidence, but does not explain
23  when the privilege log was originally served, when the parties met and conferred to discuss the
24  deficiencies, and when Nationwide amended and supplemented its privilege log.  Nor does the
25  record permit the Court to compare the original deficient entries with subsequent versions.  See
26  Schaffer Decl., Exs. N and O and ECF Nos. 36-3, 36-4.  The Court has some concerns that
27  Nationwide is engaging in obstructionist tactics, but without a clearer record, at this time, the
28  Court is unwilling to find that Nationwide has waived important protections pursuant to the

attorney-client communications privilege and work product doctrine.

Nationwide must identify the attorney(s) involved in the claim diary and other privilege log entries documenting legal advice or work product where no attorney has been named as having provided that advice, so as to allow Plaintiffs to properly assess Nationwide's privilege claims. See Fed. R. Civ. P. 26(b)(5). Nationwide's insufficient entries must be supplemented through a revised privilege log or declarations, or some combination thereof, providing sufficient information for evaluation of whether the records are lawfully protected from disclosure. This supplementation must include information in addition to the names of the attorneys. The Court is cognizant of the fact that updating hundreds of privilege log entries could be unduly burdensome, and notes that "[t]he indication of the attorney-client relationship need not be set out in each privilege log entry but may be explained in a separate document…" In re Telescopes Antitrust Lit., 2022 WL 17331257, at *4; see also LD v. United Behav. Health, No. 20CV02254YGRJCS, 2022 WL 4878726, at *2 (N.D. Cal. Oct. 3, 2022) (holding that "a party may also substantiate a claim of privilege" by means other than a privilege log, "including declarations that establish the purpose of the communication or the specific role of the sender and each individual recipient.") (internal quotation marks and citation omitted).

Nationwide should also be aware that the Court is highly skeptical of the withholding of records prior to the retention of Mr. Pardini, during the period in which the claim was reviewed by the SIU, because there is no factual record that the attorneys involved were for a dominant purpose other than investigating or adjusting the claim. See McAdam, 15 F. Supp. 3d at 1015. The Court is also highly skeptical of privilege log entries withholding of documents based on relevance. See Shenwick v. Twitter, Inc., No. 16-CV-05314-JST (SK), 2018 WL 833085, at *3 (N.D. Cal. Feb. 7, 2018) ("In general, courts frown upon the practice of redacting irrelevant information from documents based on one party's unilateral assessment of relevance."). If the parties continue to have disputes concerning the privilege logs, they shall follow the procedures for discovery disputes set forth in the undersigned's Standing Order.

### C. Omnibus Privilege Log Entry

Finally, Plaintiffs object to Nationwide's singular entry at the end of its amended privilege

log withholding "[d]ocuments dated after the filing of the complaint reflecting privileged and confidential attorney/client communications with Nationwide's counsel, including Dentons US LLP. Communications with counsel relating to this litigation are privileged and not relevant and have been withheld." Schaffer Decl., Ex. N at 89.

Plaintiffs concede that communications with Dentons, Nationwide's litigation counsel, are privileged. ECF No. 37 at 2. But they argue that the ambiguous language in the entry implies there are non-Dentons communications not detailed in the privilege logs, and which may not be privileged. Id. To the extent Plaintiffs challenge communications with or work done by Mr. Pardini as non-privileged, their arguments were already addressed by this Court.

"[C]ounsel's communications with the client and work product developed once the litigation commences are presumptively privileged and need not be included on any privilege log." Mon Cheri Bridals, LLC v. Cloudflare, Inc., No. 19-CV-01356-VC (TSH), 2021 WL 1222492, at *3 (N.D. Cal. Apr. 1, 2021) (quoting Ryan Inv. Corp. v. Pedregal de Cabo San Lucas, No. C 06-3219 JW (RS), 2009 WL 5114077, at *3 (N.D. Cal. Dec. 18, 2009)). Accordingly, Nationwide need not include any communications with counsel, Dentons or otherwise, related to the present litigation, although the Court notes the privilege logs do contain entries dated after the filing of the Complaint that Nationwide claims are privileged communications "regarding this matter." See, e.g., ECF No. 36-4 at 76 (NMIC-004149, Entry 248, dated July 15, 2022).

However, the record demonstrates that there was in fact claims-related activity that occurred after the Kumars filed their Complaint in June 2022, including Mr. Pardini's final denial letter sent on September 1, 2022. Schaffer Decl., Ex. K. Therefore, to the extent it has not done so already, Nationwide shall revise its privilege logs to include communications and documents dated after the filing of this Complaint which relate to the handling of Plaintiffs' claim.

**IV. CONCLUSION**

In accordance with the foregoing, Plaintiffs' request to compel production of Mr. Pardini's communications is **DENIED**, and **IT IS HEREBY ORDERED** that Nationwide either revise its privilege logs and/or provide Plaintiffs with additional information no later than two weeks from the date of this Order, to allow Plaintiffs to properly assess Nationwide's privilege claims under

Rule 26(b)(5)(A), by:

1) Identifying the attorney(s) involved in providing the legal advice documented in Nationwide's claim diary and other privilege log entries where no attorney(s) has been identified; and

2) To the extent it has not done so already, creating entries for any attorney-client privileged communications dated after the filing of the Complaint related to Plaintiffs' insurance claim, not the present litigation.

**IT IS SO ORDERED.**

Dated: May 23, 2023

LISA J. CISNEROS
United States Magistrate Judge